# In the United States District Court
# For the Southern District Of Georgia
# Brunswick Division

| | | |
|---|---|---|
| RICHARD E. BELL, JR.; KAREN K. BELL; and BRANDEN R. BELL, | * * * | |
| Plaintiffs, | * * | CIVIL ACTION NO.: CV214-127 |
| v. | * * | |
| FREDERIC A. ROSEN; and JOHNSON PUBLISHING COMPANY, LLC, | * * * | |
| Defendants. | * | |

## O R D E R

Plaintiffs Richard and Karen Bell, individually and as guardians of the property of their sons Brian and Branden Bell, filed this defamation action based on online articles written by Defendant Frederic A. Rosen ("Rosen") and published by Defendant Johnson Publishing Company, LLC ("Johnson Publishing"), as well as online interviews of Defendant Rosen. Presently before the Court is Defendants' fully briefed Motion to Dismiss, or in the Alternative, Motion to Transfer Venue. See Dkt. Nos. 26, 32, 34. The Court held a hearing on this Motion on February 24, 2015, see dkt. no. 38, and, at the Court's request, the parties

AO 72A
(Rev. 8/82)

have filed supplemental briefs on the issue of venue, see dkt. nos. 40-41.

For the reasons set forth below, Defendants' Motion to Dismiss, or in the Alternative, Motion to Transfer Venue (dkt. no. 26) is **GRANTED in part**, **DENIED in part**, and **REMAINS PENDING in part**: it is granted as to Defendants' request to transfer this case to the United States District Court for the Middle District of Georgia, Valdosta Division; it is denied to the extent that Defendants urge a dismissal of this case based on improper venue; and it remains pending insofar as Defendants move for dismissal for failure to state a claim. Accordingly, this cause of action is hereby **TRANSFERRED** to the United States District Court for the Middle District of Georgia, Valdosta Division.

## FACTUAL BACKGROUND

When Plaintiffs filed this action on August 27, 2014, they were residents of Valdosta, Lowndes County, Georgia. Dkt. No. 1, ¶ 1; Dkt. No. 23, ¶ 1. Plaintiffs' sons, Brian and Branden Bell, attended Lowndes County High School ("LCHS") in Valdosta. See Dkt. No. 23, ¶ 13. In January 2013, Brian Bell was a sophomore and star football player at LCHS, and Branden Bell was a senior and member of the school's wrestling team. See id. at ¶¶ 10, 13, 23; see also Dkt. No. 32, p. 3. Plaintiff Richard Bell was employed as an FBI agent, a position that he

holds to this day.  See Dkt. No. 23, ¶ 13; Dkt. No. 32, p. 6 n.1.

Defendant Johnson Publishing is a Delaware limited liability company, with its principal place of business in Delaware.  Dkt. No. 23, ¶ 2.  Defendant Johnson Publishing sells Ebony Magazine and other publications nationwide, including in the Southern District of Georgia, and runs the Web site www.ebony.com ("Ebony Web site"), which is accessible in the Southern District of Georgia.  Id. at ¶¶ 5-7.  Defendant Rosen is a resident of New York and works as a journalist.  Id. at ¶¶ 3, 5, 7.

Between August 12, 2013, and April 9, 2014, Defendant Johnson Publishing published a series of fifteen articles on the Ebony Web site, twelve of which were written by Defendant Rosen. Id. at ¶ 7.  The articles chronicled the events surrounding the death of LCHS student Kendrick Johnson ("KJ"), who was found dead inside of a rolled-up gym mat in the school's old gym on January 10, 2013.  Id. at ¶¶ 7-8; see also Dkt. No. 40-1 (copies of the KJ articles).  Specifically, the articles suggest that KJ was "murdered" or "killed" and outline various "suspicious circumstances" that surrounded his death and the subsequent investigations.  Dkt. No. 23, ¶¶ 8-9.  Employing pseudonyms, two of the articles refer to a family called the "Martins," which Plaintiffs contend is an obvious reference to their own family.

Id. at ¶¶ 10, 13.   Though the KJ articles suggest several possible courses of events and motives, the overall implication is that one or both of the "Martin" sons was suspected of murdering KJ.   See, e.g., id. at ¶¶ 10-12, 15.   In addition, the articles generally suggest a mishandling of the subsequent investigation and a possible conspiracy between public officials and the "Martins" to cover up the alleged murder of KJ.   See, e.g., id. at ¶¶ 15, 18-20.   The articles mention that one of the "Martin" boys was a white football star, and the "Martin" father was an FBI agent.   Id. at ¶¶ 10, 13.

Around the time that the KJ articles were published, Defendant Rosen made a number of media appearances to discuss and comment on the content of the articles.   Id. at ¶¶ 26-27. In one such instance, occurring on January 30, 2014, Defendant Rosen was interviewed on the Dan Zupanzky Blog Radio show.   Id. at ¶ 26.   During the interview, Defendant Rosen discussed the "Martin" brothers being a football player and wrestler at LCHS; insinuated that one or both of the brothers had a motive and opportunity to kill KJ; and represented that the "Martin" brothers, as well as their father, an FBI agent, were interviewed in the investigation of KJ's death.   Id.   Defendant Rosen's interview is available on the Internet.   See id. at ¶¶ 40-41.

On August 27, 2014, Plaintiffs filed suit against Defendants in this Court on the basis of diversity, claiming libel and slander in violation of Georgia state law.  Dkt. No. 1; Dkt. No. 23, ¶¶ 4, 30-45 (citing O.C.G.A. §§ 51-5-1, -4). Plaintiffs contend that the details in the KJ articles and the Dan Zupanzky Blog Radio show interview were sufficient to reveal their identities to those in the Valdosta area.  Dkt. No. 23, ¶¶ 36, 40.  Plaintiffs further maintain that there is no basis in fact for many of Defendants' suggestions regarding their sons' involvement in KJ's death, the family's participation in the investigation, and the conduct of the investigation itself. See id. at ¶¶ 30-45.  In particular, Plaintiffs allege that at the time of KJ's death, Branden Bell was on a bus traveling to a wrestling match in Macon, Georgia, and Brian Bell was either in class, or walking to class, at LCHS; however, Plaintiffs assert that Defendants never made any effort to verify the alibis of the brothers.  Id. at ¶¶ 22-23.  As a result of Defendants' allegedly untrue statements, Plaintiffs claim that their personal reputations, as well as Plaintiff Richard Bell's professional reputation as an FBI agent, have been permanently damaged.  Id. at ¶¶ 38, 45.

## DISCUSSION

Defendants now move pursuant to Federal Rule of Civil Procedure 12(b)(3) ("Rule 12(b)(3)") for an order dismissing

Plaintiffs' Amended Complaint for improper venue.  Dkt. No. 26, pp. 5-6.  Alternatively, if the Court determines that venue in this District is proper, Defendants request that the Court nevertheless transfer this case to the United States District Court for the Middle District of Georgia, Valdosta Division, "[f]or the convenience of the parties and witnesses [and] in the interest of justice."  Id. at pp. 6-8 (alterations in original) (quoting 28 U.S.C. § 1404(a)).  Finally, Defendants submit that if the Court retains jurisdiction over this case, Plaintiffs Richard and Karen Bell's claims of defamation per se should be dismissed with prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Id. at pp. 8-13.

## I.   Defendants' Motion to Dismiss for Improper Venue

Under Rule 12(b)(3), a party may assert improper venue as a defense to a claim for relief.  Fed. R. Civ. P. 12(b)(3).  When a defendant objects to venue, "[t]he plaintiff has the burden of showing that venue in the forum is proper."  Pinson v. Rumsfeld, 192 F. App'x 811, 817 (11th Cir. 2006).  In considering a motion filed pursuant to Rule 12(b)(3), a court accepts the facts in the plaintiff's complaint as true.  Simbaqueba v. U.S. Dep't of Def., No. CV 309-066, 2010 WL 2990042, at *2 (S.D. Ga. May 28, 2010).  "However, when a Rule 12(b)(3) motion is predicated upon key issues of fact, the court may consider matters outside the pleadings."  Id. (citing Curry v. Gonzales, No. 105-2710, 2006

WL 3191178, at *2 (N.D. Ga. Oct. 31, 2006)).  Where conflicts exist between the allegations in the complaint and the evidence outside of the pleadings, the court "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff."  Wai v. Rainbow Holdings, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004); see also Simbaqueba, 2010 WL 2990042, at *2.

In diversity cases such as this one, venue is determined in accordance with the requirements of 28 U.S.C. § 1391(b) ("Section 1391(b)"), which provides that a civil action may be brought in

> (1)  a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2)  a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or
>
> (3)  if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

A court presiding over a case "laying venue in the wrong division or district" must "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

Plaintiffs' Amended Complaint states that "[v]enue is proper in this Court pursuant to 28 U.S.C. § 1391 in that

[Defendant] Johnson [Publishing] sells <u>Ebony Magazine</u> and other publications in the Southern District of Georgia, including the Brunswick Division." Dkt. No. 23, ¶ 6 (emphasis added). Further, the Amended Complaint avers that venue is proper as to Defendant Rosen, because "he also published the defamatory statements in this matter for profit in the Southern District . . . of Georgia, and this Court may exercise pendent venue over him." <u>Id.</u>

Defendants contend that none of the venue criteria in Section 1391(b) are met for this case in the Southern District of Georgia, and that Section 1391(b)(2) applies to this case only to show that venue would be proper in the Middle District of Georgia. Dkt. No. 26, p. 5. Plaintiffs initially attempted to show that venue is proper under all three subsections of Section 1391(b). <u>See</u> Dkt. No. 24, pp. 16-20; Dkt. No. 32, pp. 4-6. However, they represented at the February 24, 2015, hearing that they intend to proceed only under Section 1391(b)(2). <u>See</u> Dkt. No. 38. Indeed, it appears that Section 1391(b)(1) does not apply, because Defendant Rosen is a resident of New York, not Georgia. <u>See</u> 28 U.S.C. § 1391(b)(1) (providing for venue in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"). Nor does Section 1391(b)(3) apply, because the parties agree that this action could be brought, in

the very least, in the Middle District of Georgia, Valdosta Division.  See id. § 1391(b)(3) (applying only "if there is no district in which an action may otherwise be brought as provided in this section"); see also Dkt. No. 26, p. 5; Dkt. No. 32, p. 6.  As a result, only Section 1391(b)(2) remains at issue.

Pursuant to Section 1391(b)(2), venue lies in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  In determining where "a substantial part of the events or omissions giving rise to the claim occurred," "[o]nly the events that directly give rise to a claim are relevant."  Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371 (11th Cir. 2003).  Thus, this Court must "focus on relevant activities of the defendant[s], not of the plaintiff[s]," and consider "only those acts and omissions that have a close nexus to the wrong."  Id. at 1371–72.  Of the places where those acts and omissions have occurred, "only those locations hosting a 'substantial part' of th[ose] [activities] are to be considered."  Id. at 1371.

As such, the language of Section 1391(b)(2) "contemplates some cases in which venue will be proper in two or more districts."  Id.  Plaintiffs are not required to select the venue with the most substantial nexus to the dispute; rather, they must simply choose a venue where a substantial part of the events occurred, even if a greater part of the events occurred

elsewhere.  Morgan v. N. MS Med. Ctr., Inc., 403 F. Supp. 2d
1115, 1122 (S.D. Ala. 2005) (citing Country Home Prods., Inc. v.
Schiller-Pfeiffer, Inc., 350 F. Supp. 2d 561, 568 (D. Vt.
2004)); see also TruServ Corp. v. Neff, 6 F. Supp. 2d 790, 792
(N.D. Ill. 1998) ("The test is not whether a majority of the
activities pertaining to the case were performed in a particular
district, but whether a substantial portion of the activities
giving rise to the claim occurred in the particular district."
(citing Pfeiffer v. Insty Prints, No. 93 C 2937, 1993 WL 443403,
at *2 (N.D. Ill. Oct. 29, 1993))).  Nevertheless, the venue
analysis under Section 1391(b)(2) generally requires a greater
level of relevant activities by the defendants than the "minimum
contacts" analysis for personal jurisdiction.  See Jenkins Brick
Co., 321 F.3d at 1372 (disapproving of cases evaluating "events
or omissions giving rise to the claim" under Section 1391(b)(2)
in a manner similar to determining the sufficiency of contacts
for personal jurisdiction).

Relevant here, libel involves the "false and malicious
defamation of another, expressed in print, . . . tending to
injure the reputation of the person and exposing him to public
hatred, contempt or ridicule."  O.C.G.A. § 51-5-1(a).
Similarly, slander per se, or oral defamation, includes
"[i]mputing to another a crime punishable by law" or "[m]aking
charges against another in reference to his trade, office, or

profession, calculated to injure him therein." Id. § 51-5-4.
In both cases, the publication of the libelous or slanderous
statement is essential to recovery. See id. § 51-5-1(b)
(libel); Scouten v. Amerisave Mortg. Corp., 656 S.E. 2d 820, 822
(Ga. 2008) (citing Kurtz v. Williams, 371 S.E. 2d 878 (Ga. Ct.
App. 1988)) (slander). Publication occurs when the libel or
slander is communicated to any person other than the person
libeled or slandered. See O.C.G.A. § 51-5-3; Scouten, 656 S.E.
2d at 822.

     In support of their argument that Section 1391(b)(2) does
not allow for venue to lie in this District, Defendants maintain
that a substantial part of the events leading up to this cause
of action took place in Valdosta, Georgia. Dkt. No. 26, p. 5.
Defendants emphasize that (1) Plaintiffs resided in Valdosta at
the time of filing this action; (2) the relevant witnesses are
located in Valdosta; (3) Plaintiffs allegedly suffered harm in
Valdosta; (4) KJ's death occurred in Valdosta; and (5) the
investigation into KJ's death took place, and continues to take
place, in Valdosta. Id. Plaintiffs counter that while "most of
the harm due to the defamation in this case was arguably
suffered in the Middle District where [they] resided when the
Complaint was filed," their reputations were harmed in the
Southern District as well, given the close proximity of Valdosta
and Brunswick. Dkt. No. 32, p. 6. Furthermore, Plaintiffs

assert that publication, a crucial element of a defamation claim, occurred nationwide, including in this District. See id. at pp. 5-6. Defendants respond to these arguments by urging the Court to employ the "weight of the contacts" test set forth in DeLong Equipment Co. v. Washington Mills Abrasive, 840 F.2d 843, 855 (11th Cir. 1988), and to find that venue is proper in the district where the defamatory statements were published and Plaintiffs resided. Dkt. No. 34, p. 7; Dkt. No. 41, pp. 2-3.

The Court agrees with Plaintiffs, and finds that venue is proper in the Southern District of Georgia, Brunswick Division because a "substantial part of the events or omissions giving rise" to Plaintiffs' libel and slander claims occurred in this District. See 28 U.S.C. § 1391(b)(2).

First, Plaintiffs claim that Defendants published libelous articles on the Ebony Web site, which can be accessed in the Southern District of Georgia and is advertised in the print editions of Ebony Magazine sold in the Southern District of Georgia. See Dkt. No. 23, ¶¶ 5-7, 36; Dkt. No. 24, p. 19 & n.5. In support, Plaintiffs have submitted evidence showing that the total sales of Ebony Magazine subscriptions in Georgia for 2013 and 2014 were $821,788 and $795,718, respectively, as well as evidence that the print editions encouraged these subscribers to visit the Ebony Web site, where the KJ articles were published. See Dkt. No. 24, p. 19 & n.5; Dkt. No. 24-1; Dkt. No. 24-2.

Plaintiffs also allege that Defendant Rosen made slanderous statements in radio and television interviews, including on the Dan Zupanzky Blog Radio show, which were broadcast on the Internet and available in this District. See Dkt. No. 23, ¶¶ 26, 40-41. While Plaintiffs do not specifically allege that any particular person in the Southern District of Georgia actually accessed the online articles or interviews, the Court can reasonably infer from Plaintiffs' submissions that Defendants' allegedly defamatory statements were communicated, and thus published, to at least one person in the Southern District of Georgia. See Simbaqueba, 2010 WL 2990042, at *2 (stating that a court ruling on a Rule 12(b)(3) motion must accept the facts in the plaintiff's complaint as true and may consider matters outside of the pleadings, drawing all reasonable inferences in favor of the plaintiff).[1] Because publication is an essential element to both libel and slander claims, Defendants' publication in the Southern District of Georgia constitutes an activity having "a close nexus to the wrong." See Jenkins Brick Co., 321 F.3d at 1372.

---

[1] While the Court draws factual inferences in Plaintiffs' favor at this stage, it does so only for the purpose of expeditiously determining whether venue is appropriate in this District. The Court makes no representation as to the legal sufficiency or merits of Plaintiffs' claims, because, as discussed in Part II of this Order, such determinations are best left for resolution in the Middle District of Georgia.

Second, Plaintiffs claim that Defendants' allegedly defamatory statements harmed their personal reputations, as well as Plaintiff Richard Bell's professional reputation as an FBI agent, in the Southern District of Georgia. See Dkt. No. 23, ¶¶ 38, 45; Dkt. No. 32, p. 6. Plaintiffs show that Valdosta and Brunswick are roughly 108 miles apart "as the crow flies," dkt. no. 40-1, and submit that this close proximity supports a finding that the harm to their reputations was not confined to the Middle District of Georgia but rather extended to this District as well, dkt. no. 32, p. 6. The harm to Plaintiffs' reputations in this District, by itself, would likely not be a sufficiently substantial event to establish venue, because the inquiry into relevant events focuses on the actions of Defendants. However, this harm, coupled with Defendants' publication, make this District a proper venue for Plaintiffs' claims. See Kravitz v. Niezgoda, No. CIV.A. 12-487, 2012 WL 4321985, at *4 (E.D. Pa. Sept. 21, 2012) ("In defamation cases, it is not enough that the plaintiff may have suffered harm in a particular district . . . . 'Injury in conjunction with another event, however, may make a district a proper venue.'" (quoting DaimlerChrysler Corp. v. Askinazi, No. CIV.A. 99-5581, 2000 WL 822449, at *6 (E.D. Pa. June 26, 2000))).

Defendants' argument based on DeLong's "weight of the contacts" test is unavailing. See Dkt. No. 34, p. 7 (citing

DeLong Equip. Co., 840 F.2d at 855); Dkt. No. 41, pp. 2-3 (same). In DeLong, the Court of Appeals for the Eleventh Circuit adopted the "weight of the contacts" test, according to which venue is proper in the district where the contacts underlying the claim weigh most heavily. DeLong Equip. Co., 840 F.2d at 855. However, DeLong was decided under an old version of Section 1391(b) requiring that a civil action be brought "only in the judicial district . . . in which the claim arose." Id. (emphasis added) (quoting 28 U.S.C. § 1391(b) (1976) (amended 1990)). Significantly, the venue statute was amended two years after DeLong, such that it now authorizes venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." See 28 U.S.C. § 1391(b)(2) (emphasis added). In applying the amended version of Section 1391(b)(2) in Jenkins Brick, the Eleventh Circuit determined that the new language contemplates venue not only in "the place where the wrong has been committed" but also in "those locations hosting a 'substantial part' of the events" giving rise to the claim. Jenkins Brick Co., 321 F.3d at 1371. Thus, while Jenkins Brick did not foreclose the use of DeLong's "weight of the contacts" test, it appears that this test is, at most, instructive, but is no longer determinative, of the venue issue. See Buckley v. Robertson, No. CIV.A. 1:96-CV-996-V, 1997 WL 33642373, at *3 (S.D. Ala. Apr. 18, 1997) (finding that pre-

amendment decisions applying the "weight of the contacts" test
"remain important sources of guidance"); see also Turner v.
Sedgwick Claims Mgmt. Servs., Inc., No. 7:14-CV-1244-LSC, 2015
WL 225495, at *11 (N.D. Ala. Jan. 16, 2015) (stating that the
amendment "clarif[ied] that venue is authorized in *any* district
in which a substantial part of the events or omissions"
occurred, "not only in 'the' single district in which the weight
of the contacts underlying the claim was deemed to preponderate"
(citations omitted) (internal quotation marks omitted) (quoting
28 U.S.C. § 1391(b)(2)); cf. Mitrano v. Hawes, 377 F.3d 402, 405
(4th Cir. 2004) ("We therefore no longer apply the 'weight of
the contacts' test.").

Defendants advocate applying the "weight of the contacts"
test to pigeonhole this case to the Middle District of Georgia.
Dkt. No. 34, p. 7; Dkt. No. 41, pp. 2-3. Indeed, the contacts
underlying Plaintiffs' claims likely weigh most heavily in the
Middle District, and Plaintiffs do not appear to dispute that
this action could have been brought in that forum. See Dkt. No.
32, pp. 5-6. Even so, under the current version of Section
1392(b)(2) and Jenkins Brick, the venue inquiry does not end
here; rather, the Court also must consider "locations hosting a
'substantial part' of the events" giving rise to Plaintiffs'
claims. See Jenkins Brick Co., 321 F.3d at 1371. Because the
Court finds, for the reasons discussed above, that a substantial

part of the relevant events occurred in the Southern District of Georgia, this District is an equally eligible venue for Plaintiffs' claims.  See Capital Corp. Merch. Banking, Inc. v. Corp. Colocation, Inc., No. 6:07-cv-1626-Orl-19KRS, 2008 WL 4058014, at *3 (M.D. Fla. Aug. 27, 2008) ("Nevertheless, the Court must conduct the venue analysis with an eye to the difficulties posed by applying [S]ection 1391[(b)](2) to a case in which the 'wrong' does not center on physical acts or omissions.  Moreover, because the harm from an online defamatory statement can occur in any place where the website or forum is viewed, no one forum should be expected to stand out as a particularly strong candidate for venue.").

Nor is the Court persuaded by Defendants' argument that venue should lie in the district in which publication occurred and Plaintiffs resided.  See Dkt. No. 41, p. 3.  Defendants are correct in that, "in the context of defamation and other non-physical torts, courts generally hold that venue under [S]ection 1391[(b)](2) is proper in the district where the injured party resides and the defamatory statements were published."  Capital Corp. Merch. Banking, 2008 WL 4058014, at *3 (collecting cases); see also Morton Grove Pharm., Inc. v. Nat'l Pediculosis Ass'n, 525 F. Supp. 2d 1039, 1043-44 (N.D. Ill. 2007) (explaining that "[e]conomic and reputational injury, in conjunction with other activities such as the dissemination

of allegedly defamatory newsletters within the district qualify as substantial parts of the events giving rise to [the plaintiff's] claim"). However, these cases do not address, much less rule out, the possibility of venue lying in another judicial district where the plaintiff does not reside, but nevertheless has suffered economic or reputational injury, and where publication has occurred. Indeed, these holdings appear to be consistent with the prevailing approach in the defamation context that "venue is proper in a district in which the allegedly defamatory statement was published, particularly if injury was suffered in the same district." Kravitz, 2012 WL 4321985, at *4 (citing DaimlerChrysler Corp., 2000 WL 822449, at *6); see, e.g., Santa's Best Craft, LLC v. Janning, No. 02 C 9529, 2003 WL 21504522, at *2 (N.D. Ill. June 30, 2003) (finding that "a substantial part of the events" giving rise to the plaintiff's defamation claim occurred in the district "where the allegedly defamatory statement [was] published" and where "the injury (if any) from the defamation was incurred"). Thus, Defendants again demonstrate only that Plaintiffs could have filed this action in the Middle District of Georgia, which is insufficient to overcome Plaintiffs' showing that a substantial part of the events occurred in the Southern District of Georgia as well.

In sum, Plaintiffs have sustained their burden of establishing that venue is proper in this District.  Therefore, the portion of Defendants' Motion seeking to dismiss this action for improper venue under Rule 12(b)(3) is **DENIED**.

## II.  Defendants' Motion to Transfer Venue

28 U.S.C. § 1404(a) ("Section 1404(a)") provides that a district court may transfer a civil action "to any other district or division where it might have been brought," when it is "for the convenience of parties and witnesses" and "in the interest of justice."  District courts are vested with broad discretion in weighing conflicting arguments regarding a venue transfer.  See England v. ITT Thompson Indus. Inc., 856 F.2d 1518, 1520 (11th Cir. 1988).  Courts traditionally afford considerable deference to a plaintiff's choice of forum, disturbing it only where it is "clearly outweighed by other considerations."  Robinson v. Giamarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996) (quoting Howell v. Tanner, 650 F.2d 610, 616 (5th Cir. 1981)).  Thus, a party who moves to transfer venue pursuant to Section 1404(a) bears the burden of establishing "that the balance of convenience and justice 'weighs heavily in favor of the transfer.'"  Duckworth v. Med. Electro-Therapeutics, Inc., 768 F. Supp. 822, 831 (S.D. Ga. 1991) (quoting Elec. Transaction Network v. Katz, 734 F. Supp. 492, 501 (N.D. Ga. 1989)).

"The question of whether a transfer is appropriate depends upon two inquires: (1) whether the action might have been brought in the proposed transferee court, and (2) whether [certain] convenience factors are present to justify the transfer." Greely v. Lazer Spot, Inc., No. CV 411-096, 2012 WL 170154, at *2 (S.D. Ga. Jan. 19, 2012) (citing Mason v. Smithkline Beecham Clinical Labs., 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001)).  The convenience factors include the following:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

Here, it appears to be relatively undisputed that the present action could have been brought in the Middle District of Georgia.  See Dkt. No. 26, p. 7; Dkt. No. 32, pp. 5-6.  Indeed, Plaintiffs claim that Defendants published defamatory statements nationwide, including in the Middle District of Georgia, and that they suffered harm while residing in that district.  Dkt. No. 23, ¶¶ 1, 36-38, 42, 45; see also Kravitz, 2012 WL 4321985,

at *4 ("[V]enue is proper in a district in which the allegedly defamatory statement was published, particularly if injury was suffered in the same district." (citing <u>DaimlerChrysler Corp.</u>, 2000 WL 822449, at *6)).  Thus, at issue is whether the nine convenience factors justify transferring this case to the Middle District of Georgia for resolution.

## A. The Convenience of the Witnesses

Convenience of the witnesses is the most important factor to consider under Section 1404(a).  <u>Duckworth</u>, 768 F. Supp. at 831 (citing <u>Elec. Transaction Network</u>, 734 F. Supp. at 501); <u>see also Ramsey v. Fox News Network, LLC</u>, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004) (citing <u>McNair v. Monsanto Co.</u>, 279 F. Supp. 2d 1290, 1311 (M.D. Ga. 2003), and <u>State Street Capital Corp. v. Dente</u>, 855 F. Supp. 192, 197 (S.D. Tex. 1994)).  Nevertheless, courts afford less weight to witnesses who closely align with either party, as it is presumed that these witnesses are more willing to testify in a different forum.  <u>See Ramsey</u>, 323 F. Supp. 2d at 1356 (citing <u>Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.</u>, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994)).  Instead, "the focus of the Court should be on the convenience of 'key witnesses'"—witnesses "which have information regarding the liability of Defendant[s]."  <u>Id.</u> at 1356-57 (citing <u>McNair</u>, 279 F. Supp. 2d at 1311, and <u>Matt v. Baxter Healthcare Corp.</u>, 74 F. Supp. 2d 467, 470 (E.D. Pa.

1999)).  "The witnesses which will determine liability are those that can shed light on the issues of falsity of the [publication], and the negligence or malice of the Defendant[s] in making the allegedly defamatory statement.  Id. at 1357 (citing Lake Park Post, Inc. v. Farmer, 590 S.E.2d 254 (Ga. Ct. App. 2003)).  Because "live testimony is preferred over other means of presenting evidence," the convenience of key witnesses "weighs most heavily on the Court in deciding on a motion to transfer venue."  Id. at 1356 (citing State Street Capital Corp., 855 F. Supp. at 197).

In support of their Motion to Transfer Venue, Defendants have submitted a declaration of their counsel, made under penalty of perjury, identifying several nonparty witnesses who were involved in the events or investigation following KJ's death: Lowndes County school officials, law enforcement personnel, investigators, and coroners; paramedics serving the Valdosta area; KJ's parents; and the attorney for KJ's family. Dkt. No. 35.  Defendants' counsel avers that these witnesses, "who are expected to present testimony and documentary evidence regarding the truth or falsity of the facts reported in the Ebony.com articles, are located in the Middle District of Georgia" and may not be willing to travel to this District to testify.  See id. at p. 2.  Defendants contend that a transfer of this action to the Middle District of Georgia, Valdosta

Division will "result in less travel and expense" and "decrease the burden" on witnesses who are required to attend trial, particularly those who will need to take time off of work to do so. Dkt. No. 34, pp. 9-10; Dkt. No. 41, p. 5.

Plaintiffs challenge the sufficiency of Defendants' counsel's declaration on the grounds that it identifies certain witnesses by category, such as "school officials," rather than by name. Dkt. No. 40, p. 3 (citing Se. Equip. Co. v. Union Camp Corp., 498 F. Supp. 164, 166 (S.D. Ga. 1980)). In addition, Plaintiffs emphasize that the list includes witnesses who "can only offer testimony on whether KJ was murdered," while the liability issues in this case involve "defamatory statements in the KJ [a]rticles that Brian and Branden Bell are suspects in the alleged murder, not only that KJ was murdered." Id. As such, Plaintiffs maintain that most of the key witnesses living in Valdosta are those testifying on their behalf, not Defendants', regarding the falsity of Defendants' statements and the resulting damage to Plaintiffs. Dkt. No. 32, p. 9. Plaintiffs further assert that they "do not anticipate that there will be many witnesses providing important testimony that will be unwilling to drive the 122 miles to the courthouse in Brunswick." Id. In any event, Plaintiffs contend that they "are willing to accept any inconvenience caused by the inability to subpoena reluctant witnesses" and that "[s]uch witnesses can

certainly be compelled to provide testimony by deposition at their places of residence," which "may be used instead of live testimony." Id. (citing Fed. R. Civ. P. 32(a)(4)(B)).

Based on these submissions, the parties agree that most of the witnesses whom they intend to call at trial live in the Valdosta area. See id.; Dkt. No. 34, p. 7. While Plaintiffs criticize the lack of specificity in Defendants' counsel's declaration, see dkt. no. 40, p. 3, the declaration sufficiently describes Defendants' anticipated witnesses at this stage of litigation and for the present purposes. Moreover, these witnesses are not closely aligned with Defendants and can fairly be considered "key witness," because their testimonies regarding the events and investigation following KJ's death may be relevant in determining Defendants' liability for defamation. See Dkt. No. 35. That is, Plaintiffs' defamation claims hinge, in part, on Defendants having made "false and malicious" statements concerning Plaintiffs' suspected involvement in KJ's death. See Dkt. No. 23, ¶¶ 30-45. Information as to the circumstances surrounding KJ's death may shed light on the truth or falsity of Defendants' statements as well as Defendants' knowledge in making these statements. See Ramsey, 323 F. Supp. 2d at 1356-57 (finding that the defendant's witnesses, including law enforcement personnel and others involved in the investigation of a murder, were "key witnesses" whose testimony

at trial could shed light on the falsity and malice of the defendant's statements suggesting that the plaintiffs were involved in said murder).

While it appears that this Court could compel these witnesses to provide live testimony at a trial in this District, as discussed in Subpart II.E, it would not be without causing a great inconvenience to them.  Indeed, the evidence shows that the witnesses would be required to travel 108 miles "as the crow flies"—which amounts to 122 miles by land transport—each way between Valdosta and Brunswick, for each day on which their testimonies might be needed at trial.  See Dkt. No. 40-1. Plaintiffs submit that their key witnesses will likely be willing to travel this distance, see dkt. no. 32, p. 9; however, Plaintiffs' closely aligned witnesses are presumed to be more willing to travel and, as such, carry less weight in evaluating the convenience of the witnesses, see Ramsey, 323 F. Supp. 2d at 1356 (citing Gundle Lining Constr. Corp., 844 F. Supp. at 1166). Moreover, Plaintiffs' willingness to accept any inconvenience of their own witnesses, see dkt. no. 32, p. 9, fails to account for the inconvenience of Defendants' witnesses and, in any event, is not part of the inquiry under this factor.  Rather, relevant here is that the majority of key nonparty witnesses are residents of Valdosta, and these witnesses will be greatly inconvenienced if they must travel to the Southern District of

AO 72A
(Rev. 8/82)

Georgia, Brunswick Division for trial. Transferring this action to the Middle District of Georgia, Valdosta Division would alleviate the burden and expense for these witnesses.

Based on these facts, Defendants have sustained their burden of proving that the Middle District of Georgia, Valdosta Division will be a more convenient forum for the key witnesses than the Southern District of Georgia, Brunswick Division. Accordingly, the convenience of key witnesses—the most important factor under Section 1404(a)—substantially weighs in favor of transferring this case to the Middle District of Georgia, Valdosta Division for resolution.

## B. The Location of Relevant Documents and the Relative Ease of Access to Sources of Proof

In a defamation case, relevant documentary evidence includes "that which was used in preparation of the allegedly defamatory report and pertinent documents maintained by non-parties." Ramsey, 323 F. Supp. 2d at 1357. Other sources of proof may include "the possibility of a jury view [of relevant premises]." Id. (alterations in original) (quoting Moore v. McKibbon Bros., Inc., 41 F. Supp. 2d 1350, 1357 (N.D. Ga. 1998)). "In evaluating access to sources of proof, the Court looks to the location of documents and other tangible materials and the ease with which the parties can transport the materials to trial." Spanx, Inc. v. Times Three Clothier, LLC, No. 1:13-

CV-710-WSD, 2013 WL 5636684, at *2 (N.D. Ga. Oct. 15, 2013)
(citing Trinity Christian Ctr. of Santa Ana, Inc. v. New
Frontier Media, Inc., 761 F. Supp. 2d 1322, 1327 (M.D. Fla.
2010)). Oftentimes, "trial will be facilitated by having the
forum in close proximity to such evidence." Id. (citing
Haworth, Inc. v. Herman Miller, Inc., 821 F. Supp. 1476, 1479
n.2 (N.D. Ga. 1992)).

        Defendants contend that "[s]ignificant documentary
evidence, including that which was used in preparation of the
allegedly defamatory report and pertinent documents maintained
by non-parties[,] is maintained in the Middle District of
Georgia," dkt. no. 34, p. 10, and submit the declaration of
their counsel in support of this fact, see dkt. no. 35, p. 2
("Upon information and belief, the documentary evidence is also
located in the Middle District of Georgia."). Defendants also
state that their evidentiary proof extends beyond these
documents to other "tangible evidence" and "the location where
[KJ's] body was found," which are "highly relevant to
Defendants' defenses" and only "located in the Middle District."
Dkt. No. 41, p. 6. Plaintiffs counter that much of the
evidence—including their own video evidence, the online
articles, and Defendants Rosen's documents used while preparing
the KJ articles in New York—is equally available in both
districts, and that the location of certain documents in the

Middle District should be afforded little weight, given that documents are now widely available electronically. Dkt. No. 32, pp. 10-11. Defendants respond that not all of the relevant evidence is available in electronic format and that even with evidence that may be filed electronically, a need to refer to the original document or evidence may arise at trial. Dkt. No. 41, p. 6.

The parties are in apparent disagreement over the location of the documentary evidence most relevant to Plaintiffs' defamation claims—namely, the documents used by Defendants in preparing the KJ articles and any documents maintained by nonparties—yet neither party offers any evidence, or at least anything beyond an "information and belief," to substantiate its position. See Dkt. No. 35, p. 2. Nevertheless, Defendants assert that they intend to use the premises where KJ's body was found as another source of proof, and it is undisputed that this physical evidence is only located in Valdosta. See Dkt. No. 23, ¶ 8; Dkt. No. 41, p. 6. While perhaps Plaintiffs could dispute the value of having these premises available for a jury view, "the fact that a jury view is impossible if the trial is held in [this District] weighs in favor of transferring the case." See Ramsey, 323 F. Supp. 2d at 1358 (citing Intergraph Corp. v. Stottler, Stagg & Assocs., 595 F. Supp. 976, 979 (N.D. Ala. 1984)). Furthermore, neither party suggests that there is any

evidence that is only located in the Southern District of Georgia or that is more accessible here than in the Middle District.

Thus, on balance, this factor weighs, slightly, in favor of transferring this case to the Middle District of Georgia, Valdosta Division.

## C. The Convenience of the Parties

While courts afford a considerable amount of deference to a plaintiff's choice of forum, Robinson, 74 F.3d at 260, the plaintiff's choice of forum "is entitled to less weight when none of the parties resides there," Ramsey, 323 F. Supp. 2d at 1355 (citing Haworth, Inc., 821 F. Supp. at 1479). In addition, it is assumed that the party moving for a venue transfer has determined that the transferee court will be a more convenient forum for it. See Pergo, Inc. v. Shaw Indus., Inc., No. 1:03-CV-1709-BBM, 2003 WL 24129779, at *2 (N.D. Ga. Sept. 16, 2003). However, to justify transfer, the "inconvenience of the present forum to the moving party [must] substantially outweigh[] the inconvenience of the proposed alternative forum to the non-moving party." Spanx, Inc., 2013 WL 5636684, at *2. "The Court may not simply shift inconvenience from one party to the other." Id.

Defendants emphasize that Plaintiffs' choice of forum is diminished in this case, because none of the parties resides in

the Southern District of Georgia.  Dkt. No. 26, p. 8.  Further, Defendants argue that the Middle District of Georgia is more convenient to Plaintiffs, as it is their home forum; more convenient to Defendants, because it will provide greater "ease of access to witnesses and evidence"; and more convenient to both parties, who will incur less travel costs and expenses for their witnesses.  See Dkt. No. 34, p. 11; Dkt. No. 41, p. 6; see also Dkt. No. 35 (attesting that Defendants' witnesses live in Valdosta and that, "[u]pon information and belief," relevant documentary evidence is also located there).  In response, Plaintiffs point out that they have since relocated to Jacksonville, Florida, which is fifty-seven miles "as the crow flies," and seventy miles by land transport, from Brunswick. Dkt. No. 40, p. 3 n.1 (citing Dkt. No. 40-1).  In addition, Plaintiffs assert that Defendants "fail[ ] to articulate why this [D]istrict is not equally convenient to [D]efendants from Illinois and New York," id. at p. 3, and submit that Defendants would have "nearly identical travel time" to either district, dkt. no. 32, p. 11.

Notably, Defendants overlook that Plaintiffs no longer reside in the Middle District of Georgia, undermining their argument that a transfer to that district would necessarily be more convenient to Plaintiffs as their "home forum."  Rather, it appears that Plaintiffs would suffer some inconvenience from the

proposed transfer, though marginally so, because Plaintiffs' new residence in Jacksonville is roughly 120 miles' driving distance from Valdosta, as compared to the seventy-mile drive from Jacksonville to Brunswick. See Mapquest, http://www.mapquest.com (last visited Sept. 22, 2015); see also Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). On the other hand, it is assumed that the Middle District of Georgia would be more convenient to Defendants, and Defendants show that they would benefit from a transfer placing trial closer to their witnesses and evidence. See Dkt. No. 34, p. 11; Dkt. No. 41, p. 6.

Thus, it appears that the inconvenience of litigating in either this District or the Middle District does not substantially outweigh the inconvenience of litigating in the other venue. Under such circumstances, the "convenience of the parties" factor is neutral and does not favor either party. See, e.g., Spanx, Inc., 2013 WL 5636684, at *2.

### D. The Locus of Operative Facts

"The 'locus of operative facts' has been interpreted as the place where events and actors material to proving liability are located." See Seltzer v. Omni Hotels, No. 09 Civ. 9115(BSJ)(JCF), 2010 WL 3910597, at *4 (S.D.N.Y. Sept. 30,

2010). "[C]ourts routinely transfer cases when the principal events occurred and the principal witnesses are located in another district." Id. (quoting In re Nematron Corp. Sec. Litig., 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998)). However, where there is no single locus of the operative facts, this factor is neutral and does not support a transfer. See Smith v. Dollar Tree Stores, Inc., No. 1:11-CV-02299-SCJ, 2012 U.S. Dist. LEXIS 76944, at *10 (N.D. Ga. May 10, 2012).

Defendants assert that the locus of operative facts lies in the Middle District of Georgia, because the witnesses and evidence needed to prove liability are located in that district. Dkt. No. 34, pp. 11-12. In addition, Defendants emphasize that a substantial portion of the events giving rise to Plaintiffs' defamation claims occurred in the Middle District: the investigation of KJ's death, the events reported in the KJ articles, Defendant Rosen's investigation prior to drafting those articles, id. at p. 12, and Plaintiffs' activities on the day of KJ's death, see dkt. no. 38 (arguing that Plaintiffs' alibis depend on events taking place in the Middle District). In response, Plaintiffs aver that there is no single locus of operative facts, and, consequently, this factor is neutral and does not support a venue transfer. Dkt. No. 32, pp. 11-12. Plaintiffs explain that the locus of operative facts "is as much where the Defendants investigated the facts (except for

Defendant Rosen's one known trip to Valdosta and his collaboration with [KJ's] family's private investigator, Beau Webster) and wrote the KJ [a]rticles outside Georgia, as it is where KJ died and Plaintiffs were injured" in Georgia.   Dkt. No. 40, p. 4.

It seems that a single locus of operative facts does exist in this case.   As discussed in Subpart II.A, most of the key witnesses to testify in this case reside in Valdosta, Georgia. In addition, it is undisputed that the allegedly defamatory articles concern a death that occurred in Valdosta and was investigated by Valdosta officials.   See Dkt. No. 23, ¶¶ 7-10; Dkt. No. 34, p. 12.   The parties also agree that Defendant Rosen traveled to Valdosta on at least one occasion, and sought the help of a private investigator in Valdosta, in order to gather information for the articles.   See Dkt. No. 34, p. 12; Dkt. No. 40, p. 4.   Moreover, Plaintiffs lived in Valdosta when these events took place.   Dkt. No. 23, ¶ 1.

The only event not occurring in Valdosta was Defendant Rosen's drafting of the articles, which apparently took place in New York, see dkt. no. 40, p. 4; however, it is the publication, not the writing, of these articles that is a principal event underlying Plaintiffs' defamation claims, see O.C.G.A. § 51-5-1(a).   The only ties to the Southern District of Georgia are the publication of the articles and harm to Plaintiffs' reputations,

yet Plaintiffs acknowledge that publication occurred nationwide
and that "most of the harm due to the defamation in this case
was arguably suffered in the Middle District where the
Plaintiffs resided." See Dkt. No. 32, pp. 5-6.  Thus, it
appears that the principal witnesses and events are located in
Valdosta, and thus in the Middle District of Georgia, with only
tenuous ties to this District.  For these reasons, the locus of
operative facts lies in Valdosta, and this factor heavily weighs
in favor of transferring this case to that venue.

### E. The Availability of Process to Compel the Attendance of Unwilling Witnesses

Pursuant to Federal Rule of Civil Procedure 45(c)(1) ("Rule
45(c)(1)"), "[a] subpoena may command a person to attend a
trial" only if the trial is either "within 100 miles of where
the person resides, is employed, or regularly transacts business
in person"; or "within the state where the person resides, is
employed is employed, or regularly transacts business in
person," only if such person "is a party or a party's officer"
or "would not incur substantial expense."

Defendants contend that "because this Court is located more
than 100 miles from Valdosta, it may be more difficult to compel
the attendance of any nonparty witnesses if the subpoena
requires the nonparty witness to incur substantial expense."
Dkt. No. 41, p. 5.  Defendants further state that the deposition

testimony of these witnesses would not suffice as a substitute for live testimony, and, therefore, the inability to compel the attendance of unwilling witnesses warrants transfer under this factor.  Dkt. No. 34, p. 10.  By contrast, Plaintiffs assert that the plain language of Rule 45(c)(1) authorizes this Court "to compel [these] witnesses to attend the trial upon payment of costs by the party demanding their testimony."  Dkt. No. 40, p. 2 (citing Fed. R. Civ. P. 45(c)(1)(B)(ii)).  As Plaintiffs expounded at the February 24, 2015, hearing, it is typical for parties to pay for the expenses of their witnesses, and the parties in this case could minimize any burden on the witnesses by taking depositions in the Middle District of Georgia.  See Dkt. No. 38.

Defendants miss the mark on this factor, as Rule 45(c)(1) grants this Court the power to subpoena witnesses living in Valdosta to attend a trial in Brunswick.  See Fed. R. Civ. P. 45(c)(1)(B)(ii).  While the 122-mile drive from Valdosta to Brunswick would be inconvenient for these witnesses, as discussed in Subpart II.A, it would not result in a "substantial expense" so as to place them outside the Court's broadly defined subpoena power.  Moreover, as Plaintiffs point out, Defendants could mitigate this expense by not requiring their witnesses to travel for depositions.  As such, Defendants have not sustained their burden of establishing that the availability of process to

compel unwilling witnesses to attend trial favors transferring this case to another venue. Thus, this factor does not support a venue transfer.

### F. The Relative Means of the Parties

Defendants maintain that because the key witnesses and evidence are located in the Middle District of Georgia, "trying the case in the Middle District would be less strenuous on the relative means necessary to adjudicate this case." Dkt. No. 34, p. 11. Plaintiffs counter that there is no difference in the relative means necessary to litigate this action in either the Middle District or Southern District. Dkt. No. 32, p. 11. Thus, Plaintiffs submit that this factor does not weigh in favor of transfer, but rather favors Plaintiffs' choice of forum. See Dkt. No. 40, p. 4.

Defendants' reiteration of the same facts used to support the "convenience of the parties" factor is insufficient, as the "relative means of the parties" factor calls for a distinct inquiry into the parties' financial means. Based on the information before the Court, the Court cannot conclude that either party is financially better able to litigate in this District or in the Middle District. Thus, it appears that the relative means of the parties has no effect on this evaluation, and this factor favors neither party.

## G. A Forum's Familiarity with the Governing Law

The parties concede that this Court and the court in the Middle District are equally familiar with Georgia defamation law. See Dkt. No. 26, p. 8; Dkt. No. 32, p. 11. The parties, therefore, agree that this factor is neutral and does not weigh in favor of either party. See Dkt. No. 34, p. 11 n.4; Dkt. No. 38.

## H. The Weight Accorded a Plaintiff's Choice of Forum

A court "must not disturb the plaintiff's choice of forum unless that choice is clearly outweighed by other considerations." Duckworth, 768 F. Supp. at 831 (citing Howell v. Tanner, 650 F.2d 610, 616 (5th Cir. 1981)). Nevertheless, the significance of a plaintiff's choice of forum is diminished when the forum selected is not the home district of any parties to the action. Ramsey, 323 F. Supp. 2d at 1355 (citing Haworth, Inc., 821 F. Supp. at 1479). In addition, the choice of forum is "afforded little weight if the majority of the operative events occurred elsewhere." AGSouth Genetics LLC v. Terrell Peanut Co., No. 3:09-CV-93 (CDL), 2009 WL 4893588, at *4 (M.D. Ga. Dec. 9, 2009) (quoting Escobedo v. Wal-Mart Stores, Inc., No. 3:08-CV-105 (CDL), 2008 WL 5263709, at *3 (M.D. Ga. Dec. 17, 2008)). "In those instances, no party is particularly inconvenienced by a transfer. Aeroquip Corp. v. Deutsch Co., 887 F. Supp. 293, 294 (S.D. Ga. 1995).

According to Defendants, the significance of Plaintiffs'
choice of forum is diminished here, so this factor is neutral.
Dkt. No. 34, p. 12.  Plaintiffs insist that their choice of
forum still should receive some deference, particularly given
the publication and harm suffered in this District and this
District's close proximity to their home forum at the time of
filing this action.  Dkt. No. 40, pp. 4-5.

Here, Plaintiffs' choice of forum is entitled to some
weight, though minimal because the Southern District of Georgia
is not the home forum of any party.  While this District is in
close proximity to Plaintiffs' home forum at the time of filing,
close proximity does not render this District their home forum
and is not part of the deference inquiry.  Moreover, although
some events underlying Plaintiffs' claims occurred in this
District, it is significant that the locus of operative facts
lies elsewhere.  Under these circumstances, Plaintiffs' choice
of this forum carries little weight, such that a transfer of
this case to the Middle District of Georgia would not
inconvenience either party in particular.  Thus, this factor is
neutral and does not weigh in either party's favor.

## I. Trial **Efficiency** and the **Interests** of **Justice, Based** on the **Totality** of the **Circumstances**

In evaluating this factor, "the Court looks at whether the
case may be resolved more expeditiously in the alternative

forum." Spanx, Inc., 2013 WL 5636684, at *5. Several factors may be relevant to this inquiry: "access to evidence, availability of witnesses, the cost of obtaining witnesses, the possibility of a jury view [of relevant premises], and all other practical problems that make trial of a case easy, expeditious and inexpensive." Ramsey, 323 F. Supp. 2d at 1357 (alterations in original) (quoting Moore, 41 F. Supp. 2d at 1357). Courts also consider "the inherent interest . . . 'in having localized controversies decided at home.'" Pergo, Inc., 2003 WL 24129779, at *3 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947)).

Defendants assert that this case would be more efficiently tried in the Middle District of Georgia, based on the convenience and costs to the witnesses and parties, dkt. no. 34, p. 14, and that a transfer to that venue would be in the interests of justice because the case will suffer little or no delay, dkt. no. 26, p. 8. Plaintiffs, who devote much of their argument to this factor, argue that transfer would not be in the interests of justice because a substantial percentage of prospective jurors in Valdosta would be unable to set aside their strong personal beliefs regarding KJ's death in order to judge this case impartially. See Dkt. No. 32, pp. 12-27; Dkt. No. 40, pp. 5-21. Plaintiffs maintain that the Valdosta community is polarized regarding the cause of KJ's death,

Plaintiffs' responsibility, and the allegations that Plaintiffs were involved in a "cover-up." Dkt. No. 40, pp. 6-10. In support, Plaintiffs submit evidence of extensive local and national publicity surrounding the investigations into KJ's death, public demonstrations in Valdosta, threats against Plaintiffs, and a social media campaign launched by KJ's family labeling Plaintiffs as murderers. See Dkt. No. 32, pp. 12-27; Dkt. No. 40, pp. 10-21; see also Dkt. Nos. 40-2 to 40-5 (attaching an affidavit,[2] news reports[3] and other public announcements, and social media pages).

---

[2] Defendants object to the attached affidavit on reliability and hearsay grounds. Dkt. No. 41, pp. 8-10. The affidavit contains the sworn statements of Leigh Touchton ("Touchton"), an NAACP leader who investigated KJ's death, attesting to the truth of an article published in the Atlanta Journal Constitution, the polarization of the Valdosta community, and the inability to obtain an impartial jury in that location. Dkt. No. 40-2. Touchton has no personal knowledge of the statements in the newspapers article, given that she did not write it, and has no specialized knowledge of the jury selection process. See Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); Fed. R. Evid. 701 ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge."); see, e.g., Anderson v. Dallas Cty., No. 3:05-CV-1248-G, 2007 WL 1148994, at *5 (N.D. Tex. Apr. 18, 2007) (excluding statements in newspaper articles, on the basis that "the blanket statement in a form affidavit sworn by someone other than the authors of the articles presented" was insufficient to establish "that the reporters actually had personal knowledge of each and every fact reported in the articles" so as to take the statements outside the definition of hearsay). While Touchton's affidavit is, therefore, largely inadmissible as evidence in opposition to the instant Motion, the Court considers those statements briefly touching on Touchton's own personal observations of the Valdosta community. See Dkt. No. 40-2, pp. 1-3.

AO 72A
(Rev. 8/82)

Defendants highlight Plaintiffs' failure to address the first part of this factor, that this case would be tried more efficiently in the Middle District.  Dkt. No. 34, p. 14.  In addition, Defendants contend that Plaintiffs lack any credible evidence of jury impartiality and, at best, demonstrate only that jurors may be aware of the events underlying Plaintiffs' claims.  Id. at p. 12; Dkt. No. 41, p. 7.  Noting that these events have garnered national, not just local, media attention, Defendants speculate that the alleged prejudice is equally likely with a jury in the Southern District of Georgia.  Dkt. No. 34, p. 13; Dkt. No. 41, p. 7.  Nevertheless, Defendants submit that any prejudice can be cured, and Plaintiffs can receive a fair trial, by a "judicious use of measures commonly employed in sensational cases," such as voir dire in jury selection to disqualify jurors biased by the media.  Dkt. No. 34, pp. 13-14 (quoting Ramsey, 323 F. Supp. 2d at 1358).

First, considering the totality of the circumstances, it appears that this case would be resolved more expeditiously in

---

[2]  Defendants also object to the attached news reports as inadmissible hearsay, to the extent that Plaintiffs seek to rely upon them to establish the truth of the statements therein.  Dkt. No. 41, p. 7 n.1.  Because it appears that Plaintiffs offer these reports not for their truth but rather for the fact of their publication, this evidence is relevant to Plaintiffs' publicity argument and does not fall within the definition of hearsay.  See Fed. R. Evid. 801(c) (defining "hearsay" as a statement not made in court and offered in evidence "to prove the truth of the matter asserted in the statement").  Thus, the Court considers the reports only for this limited purpose in ruling on the instant Motion.

the Middle District of Georgia, Valdosta Division. It is well established that the majority of the witnesses live in Valdosta and that a jury view of the premises of KJ's death is only possible there. See supra Subparts II.A-B. Thus, trying this case in the Middle District would prevent unnecessary travel and expense for the witnesses, thus decreasing the litigation costs of the parties, and would permit the jurors an opportunity to view the physical evidence that might aid in ascertaining the truth or falsity of Defendants' allegedly defamatory statements. As a result, trial efficiency weighs in favor of transferring this case to the Middle District.

Second, it appears that transfer would be in the interests of justice. Because the locus of operative facts lies in Valdosta, as discussed in Subpart II.D, the Middle District of Georgia has an inherent interest in having this localized controversy decided in that forum. See Pergo, Inc., 2003 WL 24129779, at *3 (quoting Gulf Oil Corp., 330 U.S. at 509). Additionally, a transfer to the Middle District, particularly at this stage in litigation, would not impede or otherwise delay the progress of this case. Furthermore, the Court has no reason to believe that Plaintiffs would not receive a fair trial in the transferee court.

Plaintiffs' concern over potential jury prejudice in the Middle District does not change this result. Jury prejudice is

AO 72A
(Rev. 8/82)

presumed from pretrial publicity that is "sufficiently prejudicial and inflammatory" and has "saturated the community where the trial[ ] [will be] held." Coleman v. Kemp, 778 F.2d 1487, 1490 (11th Cir. 1985) (citing Murphy v. Florida, 421 U.S. 794, 798-99 (1975), Rideau v. Louisiana, 373 U.S. 723, 726-27 (1963), and Mayola v. Alabama, 623 F.2d 992, 997 (5th Cir. 1980)). However, "[t]he presumed prejudice principle is 'rare[ly]' applicable and is reserved for an 'extreme situation.'" Id. (second alteration in original) (citations omitted) (quoting Neb. Press Ass'n v. Stuart, 427 U.S. 539, 554 (1976), and Mayola, 623 F.2d at 997). This principle applies only where "prejudicial pretrial publicity . . . so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from that community." Id. (quoting Mayola, 623 F.2d at 997). Thus, "the relevant question is not whether the community is aware of the case, but whether the prospective jurors have such fixed opinions that they are unable to judge impartially and resolve the dispute between the parties." McRae v. Perry, No. CV 211-193, 2012 WL 3886094, at *1 (S.D. Ga. Sept. 6, 2012) (quoting Haworth, Inc., 821 F. Supp. at 1480).

Plaintiffs' evidence of pretrial publicity indicates that prospective jurors in Valdosta may be familiar with Plaintiffs and the circumstances giving rise to this case. However,

Plaintiffs fail to demonstrate that this publicity has saturated the entire Middle District of Georgia to the point where any jury pool drawn therefrom would necessarily have such fixed opinions so as to preclude jury impartiality and a fair trial. Moreover, Plaintiffs focus on a perceived prejudice from the jury pool in Valdosta, overlooking that jurors could be selected from the entire Middle District of Georgia, which extends from Valdosta to Athens.  Furthermore, as Defendants point out, adequate procedural measures exist for screening out any potentially biased jurors at the jury selection stage, even in cases that have become the subject of national headlines.  Thus, at this stage, this case does not present the "extreme situation" where it is "virtually impossible" for Plaintiffs to obtain an impartial jury in the transferee court.  See Coleman, 778 F.2d at 1490 (quoting Mayola, 623 F.2d at 997).[4]

Rather, it appears that transferring this case to the Middle District would promote both trial efficiency and the interests of justice.  Thus, this factor weighs heavily in favor of transferring this case for resolution in that venue.

**J. Conclusion**

---

[4]   This Court's resolution of this factor at this stage does not preclude Plaintiffs from arguing at a later stage of this case that an impartial jury cannot be selected from the jury pool in the Middle District of Georgia.  However, that ultimate determination should be made by the Middle District of Georgia on a more developed record than that currently before the Court.

Defendants have carried their burden of demonstrating that the balance of the foregoing factors substantially weighs in favor of transferring this case.  Section 1404(a) contemplates transfer for the "convenience of the parties and witnesses" and "in the interest of justice."  28 U.S.C. § 1404(a).  As discussed above, the Middle District of Georgia, Valdosta Division is a much more convenient forum for the witnesses, which is the most important factor bearing on a proposed transfer.  In addition, the Middle District houses physical evidence that cannot be transferred for a jury view; hosted the pertinent events and investigations following KJ's death; and would allow for a more expeditious resolution of this case.

While Plaintiffs chose to file this action in the Southern District of Georgia, and the publication and alleged harm occurred in part in this District, these considerations are strongly, and convincingly, outweighed by the other factors.  Because the relevant factors under Section 1404(a) favor a transfer of venue, this portion of Defendants' Motion is **GRANTED**.  This case is due to be **TRANSFERRED** to the Middle District of Georgia, Valdosta Division.

**III. Defendants' Motion to Dismiss for Failure to State a Claim**

Based on the Court's decision to transfer this case to another venue, the Court declines to consider the portion of Defendants' Motion calling for an evaluation of Plaintiffs'

claims on the merits.  Rather, this portion of Defendants'
Motion **REMAINS PENDING** for resolution in the Middle District of
Georgia.

## CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss, or
in the Alternative, Motion to Transfer Venue (dkt. no. 26) is
**GRANTED in part**, **DENIED in part**, and **REMAINS PENDING in part** as
follows: the portion urging a dismissal of this case based on
improper venue is **DENIED;** the portion requesting a transfer of
this case to the United States District Court for the Middle
District of Georgia, Valdosta Division is **GRANTED;** and the
portion seeking a dismissal for failure to state a claim **REMAINS
PENDING** for resolution in the transferee court.  This case is
hereby **TRANSFERRED** to the United States District Court for the
Middle District of Georgia, Valdosta Division.  The Clerk of
Court is **DIRECTED** to transmit a complete record of this case,
including all pending motions, to the clerk's office of the
Middle District of Georgia for filing.

**SO ORDERED**, this 22ND day of September, 2015.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)